UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CR. NO. 1:26-CR-00157 |
| | : | |
| v. | : | |
| | : | (Judge MANNION          ) |
| **CHRISTOPHER SLATER,** | : | |
| **MARK KEAGEL,** | : | |
| | : | (UNDER SEAL) |
| Defendants. | : | |

## INDICTMENT

THE GRAND JURY CHARGES:

At times material to this Indictment:

**FILED**
HARRISBURG, **PA**

JUL 1 5 2026

PER ____IBR____
DEPUTY CLERK

## COUNT 1
18 U.S.C. § 1349
(Conspiracy to Commit Mail Fraud)

### BACKGROUND

1. Defendant CHRISTOPHER SLATER (a.k.a., "Bris"), was a resident of Los Angeles, California.

2. INDIVIDUAL 1 was an associate of SLATER, residing in or around greater Los Angeles, California.

3. INDIVIDUAL 2 was another associate of SLATER residing in or around greater Los Angeles, California.

4. INDIVIDUAL 3 was a business associate of Individual 2 who lived in the Los Angeles, California area.

5. INDIVIDUAL 4 was a resident of York, Pennsylvania and owned a small education business.

6. Defendant MARK KEAGEL was a resident of York, Pennsylvania.

7. MARK KEAGEL was the co-owner of Mark Alan Industries. He also was the co-owner of Innovative Design and Fabrication. Innovative Design and Fabrication was established in or around 2011, and Mark Alan Industries was established in or around 2012. Both businesses had ceased operations by January 2020. INDIVIDUAL 3 and KEAGEL worked together on these two businesses.

8. In or around 2023, KEAGEL created two new businesses, named A1AN and Innfab.

9. The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States.

10. An Employer's Quarterly Federal Tax Return, Form 941 ("Form 941") was used by employers to report income taxes, Social Security tax, and Medicare tax withheld from employees' paychecks.

11. An Employer Identification Number ("EIN") was a federal tax identification number assigned by the IRS to identify businesses and some other entities.

*COVID-Related Tax Credits*

12. During the COVID-19 pandemic, Congress created multiple COVID-related refundable tax credits, including the Employee Retention Credit ("ERC") and the Paid Sick and Family Leave Credit ("SFLC" and together with the ERC, the "COVID-Related Tax Credits").

13. The ERC was a refundable tax credit for certain eligible businesses and tax-exempt organizations that were affected by the COVID-19 pandemic and that paid qualified wages to employees during the pandemic.

14. The SFLC was a refundable tax credit to eligible employers who paid wages for certain sick or family leave taken by employees related to the COVID-19 pandemic.

3

15. Employers could not claim the same wages as both qualified sick leave wages and qualified family leave wages and were not eligible to receive both the ERC and SFLC with respect to the same wages.

16. An employer claimed COVID-Related Tax Credits by filing a Form 941 with the IRS for the relevant quarter. The Form 941 required an employer to provide to the IRS information about the number of employees and the wages paid during that quarter.

## THE CONSPIRACY

17. Paragraphs 1 through 16 are incorporated here.

18. Beginning in or around October 2022 and continuing until at least in or around the middle of 2023, in the Middle District of Pennsylvania, and elsewhere, the defendant,

**CHRISTOPHER SLATER**

did knowingly combine, conspire, confederate, and agree, together and with other persons both known and unknown to the Grand Jury, to commit offenses against the United States, that is:

To devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations,

4

and promises, and to willfully participate in such a scheme and artifice with knowledge of its fraudulent nature, with the intent to defraud, and for the purpose of executing such scheme and artifice, placing in any post office or authorized depository for mail matter any matter or thing whatever to be sent and delivered by the Postal Service, depositing and causing to be deposited any matter or thing whatever to be sent and delivered by any private or commercial interstate carrier, and taking and receiving from an authorized depository or mail matter any matter or thing, in violation of 18 U.S.C. § 1341 (Mail Fraud).

## MANNER AND MEANS OF THE CONSPIRACY

It was part of the conspiracy that:

19. CHRISTOPHER SLATER, INDIVIDUAL 1, INDIVIDUAL 2, INDIVIDUAL 3, and others recruited individuals who owned business entities (the "business owners") for which false and fraudulent Forms 941 could be filed claiming COVID-Related Tax Credits.

20. SLATER directly recruited some business owners as part of the scheme. He also worked with INDIVIDUAL 2 and others, who themselves recruited additional business owners with SLATER's

5

participation. SLATER told the business owners he recruited, as well as the recruiters he worked with, that he would take a cut of the proceeds, typically around 60 percent or more of any funds received.

21. Once a business owner was recruited, they provided their business name, address, and EIN.

22. SLATER gave this business identifying information to INDIVIDUAL 1, and INDIVIDUAL 1 filed and caused to be filed false and fraudulent Forms 941 claiming COVID-Related Tax Credits on behalf of the business. The Forms 941 were false and fraudulent, among other reasons, because the businesses were defunct, either did not have employees or had fewer employees than claimed, or had not paid the wages needed to qualify for the ERC or SFLC. As a result, the businesses were not entitled to receive the claimed COVID-Related Tax Credits.

23. In total, SLATER participated in the recruitment of business owners who owned approximately 35 businesses whose information he passed along to INDIVIDUAL 1. INDIVIDUAL 1 filed and caused to be filed approximately 280 false and fraudulent Forms 941 for these 35

6

businesses claiming approximately $52.7 million in refunds owed due to COVID-Related Tax Credits, of which the IRS paid approximately $32.2 million.

24. Once the false and fraudulent Forms 941 were filed, SLATER worked with INDIVIDUAL 1 to track the status of the filed Forms 941 and the refunds claimed.

25. Treasury checks for the COVID-Related Tax Credit refunds were mailed to the business owners.

26. On some occasions where banks or the IRS questioned the business owner, members of the conspiracy assisted the business owners by providing false stories to allay suspicion.

27. In furtherance of this conspiracy:

    a. MARK KEAGEL was one of the recruited business owners who owned two defunct businesses: Innovative Design and Fabrication and Mark Alan Industries.

    b. KEAGEL was recruited by INDIVIDUAL 3, who himself was recruited by INDIVIDUAL 2. INDIVIDUAL 3 then coordinated with KEAGEL.

c. KEAGEL provided the name, address, and EIN of his defunct businesses to INDIVIDUAL 3.

d. On or about March 12, 2023, SLATER sent information about KEAGEL and Mark Alan Industries to INDIVIDUAL 1.

e. On or about April 7, 2023, SLATER sent information about KEAGEL and Innovative Design and Fabrication to INDIVIDUAL 1.

f. In or around April 2023, INDIVIDUAL 1 filed and caused to be filed false and fraudulent Forms 941 for Mark Alan Industries and Innovative Design and Fabrication, for several quarters starting in or around the second quarter of 2020 and continuing until in or around the second quarter of 2022.

g. These Forms 941 were false and fraudulent because they reported that, among other things, between the second quarter of 2020 and the second quarter of 2022, the two businesses had paid large amounts of sick and family

leave wages, and that Mark Alan Industries and Innovative Design and Fabrication had as many as 21, and 19 employees, respectively. In reality, the businesses had been defunct since at least early 2020 and had stopped employing any individuals or paying any wages.

h. These approximately eighteen Forms 941 filed for Mark Alan Industries and Innovative Design and Fabrication claimed over $3.8 million in tax refunds due to COVID-19 Related Tax Credits for the two businesses.

i. The IRS processed the tax returns and mailed checks for approximately $3,696,961 to KEAGEL in or around York, Pennsylvania.

28. Also in furtherance of this conspiracy:

a. INDIVIDUAL 2 and INDIVIDUAL 3 recruited INDIVIDUAL 4, who owned a small education business. INDIVIDUAL 4 provided their personal and business information to INDIVIDUAL 3, who sent it to INDIVIDUAL 2.

b. In or around December 2022, SLATER sent this information to INDIVIDUAL 1.

c. In or around January 2023, INDIVIDUAL 1 filed and caused to be filed approximately nine Forms 941 in the name of INDIVIDUAL 4's business. The Forms 941 falsely and fraudulently reported, among other things, that the business had paid as many as 15 employees over $1 million in wages, including over $1 million in sick and family leave wages, and claimed a tax refund of approximately $1.3 million.

d. The IRS processed the returns and mailed checks that were collectively worth over $565,000 to INDIVIDUAL 4's address in York, Pennsylvania.

e. INDIVIDUAL 2 coordinated with INDIVIDUAL 3, who told INDIVIDUAL 4 where to send their cut and SLATER's cut of the proceeds.

f. INDIVIDUAL 4 sent funds from York, Pennsylvania to a bank account owned by an associate of SLATER. SLATER

instructed that associate where, in turn, to wire funds and also withdrew funds from that account in cash.

g. When federal agents approached INDIVIDUAL 4, INDIVIDUAL 4 called INDIVIDUAL 3. INDIVIDUAL 2 and INDIVIDUAL 3 gave INDIVIDUAL 4 false and misleading information to tell federal agents.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### 18 U.S.C. § 1956(h)
### (Conspiracy to Launder Monetary Instruments)

29. Paragraphs 1 through 16 and 19 through 28 are incorporated here.

30. Beginning in or around October 2022 and continuing until in or around 2024, in the Middle District of Pennsylvania, and elsewhere, the defendants,

**CHRISTOPHER SLATER,** and
**MARK KEAGEL,**

did knowingly combine, conspire, confederate, and agree, together and with other persons both known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit: To knowingly engage or attempt to engage in a monetary transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, mail fraud and theft of government property, of criminally derived property of a value greater than $10,000 in violation of Title 18, United States Code, Section 1957(a).

MANNER AND MEANS OF THE CONSPIRACY

It was part of the conspiracy that:

31. SLATER oversaw the recruitment of individuals with businesses that could be used to file false and fraudulent Forms 941 claiming COVID-Related Tax Credits and directed those individuals' movement of funds following their receipt of payments.

32. After the individuals received checks from the U.S. Treasury, SLATER oversaw the transfer of his cut of the proceeds to accounts he owned, controlled, or used. SLATER told the individuals who received payments where to send his cut of the proceeds. Where the business owners were recruited by others managed by SLATER, SLATER told the sub-recruiters where the business owners should send the funds.

33. SLATER and INDIVIDUAL 1 typically received, and then divided between each other, around 60 percent of the fraud proceeds from the false and fraudulent Forms 941. Recruiters under SLATER, such as INDIVIDUAL 2, sometimes took further cuts of these proceeds.

34. SLATER directed that his cut of the proceeds be sent to various bank accounts he owned, controlled, or used, including accounts

13

in the names of other individuals and businesses. SLATER and INDIVIDUAL 1 kept track of how much each business owner received and whether they had paid funds to SLATER and INDIVIDUAL 1.

35. For example, SLATER and others coordinated the transfer of funds from KEAGEL to accounts that SLATER owned, controlled, or used in the following manner:

    a. From on or about May 16, 2023 until on or about June 6, 2023, approximately eighteen U.S. Treasury checks were sent to KEAGEL for fraudulently obtained COVID-Related Tax Credits totaling approximately $3,696,960.61. From on or about May 19, 2023 until on or about August 7, 2023, KEAGEL deposited these checks across three bank accounts: two accounts at Wells Fargo Bank for Mark Alan Industries LLC ending in -7156 and -0986, and a third Wells Fargo account for Innovative Design & Fabrication LLC ending in -3168.

    b. KEAGEL then transferred the majority of the funds to various people and entities who had recruited him, acting at

the direction of INDIVIDUAL 3. KEAGEL also transferred funds to two new businesses he created, named A1AN and Innfab.

c. On or about June 16, 2023, KEAGEL ordered a cashier's check from the Mark Alan Industries LLC account at Wells Fargo Bank ending in -7156 for approximately $30,900, made payable to Company-1. Company-1, whose identity is known to the Grand Jury, was a business owned by an associate of SLATER, who acted at SLATER's direction. The cashier's check was deposited on or about June 23, 2023, at a Company-1 account at U.S. Bank ending in -4985.

d. On or about June 16, 2023, KEAGEL also ordered a cashier's check from the Mark Alan Industries LLC account at Wells Fargo Bank ending -7156 for approximately $33,200 made payable to Quitt LLC. Quitt LLC was a business co-owned by SLATER. The check was deposited on or about June 23, 2023 at an account at Southwestern National Bank ending in -3897. SLATER had signature authority over this account.

15

e.  On or about July 5 and July 13, 2023, KEAGEL ordered two additional cashier's checks made payable to Company-1, from the Mark Alan Industries LLC account at Wells Fargo Bank ending in -7156 for approximately $29,700 and $24,900, respectively. These checks were deposited on or about July 17, 2023 at a Company-1 account ending in -4985.

f.  On or about July 5, 2023, KEAGEL also ordered an additional check from the Mark Alan Industries LLC account at Wells Fargo Bank ending in -7156 to Quitt LLC for approximately $27,600. The check was deposited into a Quitt LLC bank account at Navy Federal Credit Union ending in -9365 on or about July 25, 2023. SLATER had signature authority over this Quitt LLC account.

g.  KEAGEL also ordered checks written to entities owned by INDIVIDUAL 2 and INDIVIDUAL 3, as well as to the relatives of INDIVIDUAL 2. Through these checks, additional proceeds of the U.S. Treasury Checks were

transferred to INDIVIDUAL 2, INDIVIDUAL 3, and others who helped recruit KEAGEL to the scheme.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 3 THROUGH 8
### 18 U.S.C. § 1341
### (Mail Fraud)

36. Paragraphs 1 through 16, 19 through 28, and 31 through 35, are incorporated here.

37. On or about the dates set forth below, in the Middle District of Pennsylvania, and elsewhere, the defendant,

### CHRISTOPHER SLATER,

aiding and abetting other persons both known and unknown to the Grand Jury, with the intent to defraud, did devise and willfully participate in, with knowledge of its fraudulent nature, a scheme and artifice to defraud and obtain money by materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, knowingly placed in any post office or authorized depository for mail matter any matter or thing whatever to be sent and delivered by the Postal Service, deposited and caused to be deposited any matter or thing whatever to be sent and delivered by any private or commercial interstate carrier, and caused to be delivered by mail and

private or commercial interstate carrier according to the direction

thereon, and at the place at which it was directed to be delivered by the

person to whom it was addressed, any such matter or thing, as

described below:

| Count | Sent On or About | Sender / Approximate Location | Intended Recipient / Approximate Location | Contents & Approximate Payment Amount |
|---|---|---|---|---|
| 3 | 2/21/2023 | U.S. Department of the Treasury, Kansas City, KS | INDIVIDUAL 4, York, PA | U.S. Treasury Check for $208,141.54 |
| 4 | 2/28/2023 | U.S. Department of the Treasury, Kansas City, KS | INDIVIDUAL 4, York, PA | U.S. Treasury Check for $201,528.74 |
| 5 | 5/16/2023 | U.S. Department of the Treasury, Kansas City, KS | Mark Alan Industries LLC, York, PA | U.S. Treasury Check for $285,627.22 |
| 6 | 5/16/2023 | U.S. Department of the Treasury, Kansas City, KS | Mark Alan Industries LLC, York, PA | U.S. Treasury Check for $276,703.49 |
| 7 | 6/6/2023 | U.S. Department of the Treasury, Kansas City, KS | Innovative Design & Fabrication, York, PA | U.S. Treasury Check for $249,278.53 |
| 8 | 6/6/2023 | U.S. Department of the Treasury, Kansas City, KS | Innovative Design & Fabrication, York, PA | U.S. Treasury Check for $279,700.57 |

All in violation of Title 18, United States Code, Sections 1341, and

2.

## COUNTS 9 THROUGH 13
### 18 U.S.C. § 1957
### (Unlawful Monetary Transactions)

38. Paragraphs 1 through 16, 19 through 28, and 31 through 35, are incorporated here.

39. On or about the dates set forth below, in the Middle District of Pennsylvania, and elsewhere, the defendants,

### CHRISTOPHER SLATER, and
### MARK KEAGEL,

aiding and abetting one another and other persons both known and unknown to the Grand Jury, knowingly engaged in and attempted to engage in the following monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, transfer, and exchange of U.S. currency and funds, such property having been derived from specified unlawful activity, namely, theft of government property and mail fraud, in violation of Title 18, United States Code, Sections 641 and 1341, respectively, with each transaction set forth below a separate count:

21

| Count | On or About | Monetary Transaction & Approximate Amount Transacted |
|---|---|---|
| 9 | June 16, 2023 | Purchase of a cashier's check for $30,900 from account of Mark Alan Industries LLC at Wells Fargo Bank ending -7156, which was later deposited to account of Company-1 at U.S. Bank ending -4985. |
| 10 | July 5, 2023 | Purchase of a cashier's check for $29,700 from account of Mark Alan Industries LLC at Wells Fargo Bank ending -7156, which was later deposited to account of Company-1 at U.S. Bank ending -4985. |
| 11 | July 13, 2023 | Purchase of a cashier's check for $24,900 from account of Mark Alan Industries LLC at Wells Fargo Bank ending -7156, which was later deposited to account of Company-1 at U.S. Bank ending -4985. |
| 12 | June 16, 2023 | Purchase of a cashier's check for $33,200 from account of Mark Alan Industries LLC at Wells Fargo Bank ending -7156, which was later deposited to account of Quitt LLC at Southwestern National Bank ending -3897. |
| 13 | July 5, 2023 | Purchase of a cashier's check for $27,600 from the account of Mark Alan Industries LLC at Wells Fargo Bank ending -7156, which was later deposited to account of Quitt LLC at Navy Federal Credit Union ending -9365. |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNTS 14 THROUGH 15
### 18 U.S.C. § 1957
(Unlawful Monetary Transactions)

40. Paragraphs 1 through 16, 19 through 28, and 31 through 35, are incorporated here.

41. On or about the dates set forth below, in the Middle District of Pennsylvania, and elsewhere, the defendant,

**MARK KEAGEL,**

knowingly engaged in and attempted to engage in the following monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, transfer, and exchange of U.S. currency and funds, such property having been derived from specified unlawful activity, namely, theft of government property and mail fraud, in violation of Title 18, United States Code, Sections 641 and 1341, respectively, with each transaction set forth below a separate count:

| Count | On or About | Monetary Transaction & Approximate Amount Transacted |
|---|---|---|
| 14 | December 27, 2023 | Transfer of $495,000 from account of Mark Alan Industries LLC at Wells Fargo Bank ending -7156, to account of A1AN at Bank of America ending -3489. |
| 15 | January 4, 2024 | Transfer of $160,000 from account of Innovative Design & Fabrication LLC at Wells Fargo Bank ending -3168, to account of Innfab at Small Business Bank ending -7757. |

All in violation of Title 18, United States Code, Section 1957.

## COUNTS 16 THROUGH 30
### 18 U.S.C. § 641
### (Theft of Government Property)

42. Paragraphs 1 through 16, 19 through 28, and 31 through 35 are incorporated here.

43. On or about the dates set forth below, in York, Pennsylvania, within the Middle District of Pennsylvania, and elsewhere, the defendant,

### MARK KEAGEL,

did knowingly receive, conceal, and retain with intent to convert to his use and gain money of the Department of the Treasury, a department or agency of the United States, namely, the United States Treasury payments listed below, which he knew had been stolen, purloined, and converted, having the values listed below:

| Count | On or About | U.S. Treasury payee & approximate payment amount |
|---|---|---|
| 16 | May 19, 2023 | U.S. Treasury check for Mark Alan Industries LLC for $285,627.22 |
| 17 | May 26, 2023 | U.S. Treasury check for Mark Alan Industries LLC for $276,703.49 |
| 18 | May 26, 2023 | U.S. Treasury check for Mark Alan Industries LLC for $257,506.65 |
| 19 | June 2, 2023 | U.S. Treasury check for Mark Alan Industries LLC for $276,703.49 |
| 20 | June 2, 2023 | U.S. Treasury check for Mark Alan Industries LLC for $230,400.53 |
| 21 | June 2, 2023 | U.S. Treasury check for Innovative Design & Fabrication for $297,032.68 |
| 22 | June 20, 2023 | U.S. Treasury check for Mark Alan Industries LLC for $247,576.65 |
| 23 | June 20, 2023 | U.S. Treasury check for Innovative Design & Fabrication for $265,764.24 with check number 004551 |
| 24 | June 20, 2023 | U.S. Treasury check for Innovative Design & Fabrication for $265,764.24 with check number 004552 |
| 25 | July 7, 2023 | U.S. Treasury check for Mark Alan Industries LLC for $207,841.03 |
| 26 | July 7, 2023 | U.S. Treasury check for Innovative Design & Fabrication for $214,922.94 |
| 27 | July 24, 2023 | U.S. Treasury check for Mark Alan Industries LLC for $87,380.52 |
| 28 | July 24, 2023 | U.S. Treasury check for Innovative Design & Fabrication for $253,691.1 |
| 29 | August 7, 2023 | U.S. Treasury check for Innovative Design & Fabrication for $279,700.57 |
| 30 | August 7, 2023 | U.S. Treasury check for Innovative Design & Fabrication for $249,278.53 |

In violation of Title 18, United States Code, Section 641.

## FORFEITURE ALLEGATIONS

44. The allegations contained in Counts 1 through 30 of this Indictment are incorporated here for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1), Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982.

45. Upon conviction of an offense set forth in Counts 1 through 16 of this Indictment, as relevant to each defendant, the defendants,

**CHRISTOPHER SLATER,** and
**MARK KEAGEL**

shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1), Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982, any property, real or personal, that constitutes, is derived from, or is traceable to the proceeds obtained directly or indirectly from the commission of the offense of which the person is convicted; or that is used to commit, facilitate, or promote, or is intended to be used to commit, facilitate, or promote, the commission of the offense of which the person is convicted; or that is involved in such offenses. The property to be forfeited includes, but is

not limited to, the following:

    a. approximately $32.2 million in US currency;

46. If any of the property described above, as a result of any act or omission of the defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 982(a)(1) and 982(b); Title 21, United States Code, Section 853(p); and Title 28, United States Code, Section 2461(c).

A TRUE BILL



FOREPERSON

BRIAN D. MILLER
United States Attorney


RAVI ROMEL SHARMA
Assistant United States Attorney

_7/15/26_
Date


EZRA SPIRO
Trial Attorney